ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Bulova Technologies Ordnance Systems LLC ) ASBCA No. 57406
)
Under Contract No. W91CRB-09-C-0014 )

APPEARANCES FOR THE APPELLANT: Eric R. Pellenbarg, Esq.
Phelps Dunbar LLP
Tampa, FL

Craig Schnee, Esq.
General Counsel

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Samuel E. Gregory, JA
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## ON APPELLANT'S MOTION FOR RECONSIDERATION

On 3 March 2014, Bulova Technologies Ordnance Systems LLC (appellant) timely filed a motion for reconsideration on our 28 January 2014 decision in *Bulova Technologies Ordnance Systems LLC*, ASBCA No. 57406, 14-1 BCA ¶ 35,521 (*Bulova*).[1] Our decision sustained in part and denied in part appellant's appeal of the termination of appellant's contract for default. Appellant moves for reconsideration of our decision asserting that the Board's decision contains mistakes in its findings of fact and errors of law which justify conversion of that portion of the decision that denied its appeal related to acquisition of PKM medium machine guns from Bulgaria and the PSL sniper rifles and scopes from Romania. The government opposes the motion. Familiarity with our decision is presumed and references to findings are to findings in our decision.

*Background*

The original contract delivery dates for the weapons from Bulgaria and Romania were triggered by receipt of End Use Certificates (EUCs) provided by the government; we determined this requirement to mean EUCs acceptable to the exporting countries. The government took the position that acceptable EUCs were received on 22 May 2009 but we

---

[1] Judge Elizabeth Grant, who authored the 28 January 2014 decision, has retired.

found that date to be a year later, 19 May 2010 (finding 22). However, this scheme was revised by Modification No. P0002 (Mod. 2); as a result, delivery of those weapons was not contingent on receipt of an acceptable EUC. Instead, Mod. 2 set specific delivery dates. (Finding 23)

On the merits, appellant argued that Mod. 2 was unenforceable because Bulova provided no monetary consideration to the government for the delivery extensions and appellant was only agreeing to perform a pre-existing duty (to deliver weapons) which does not constitute consideration (app. br. at 11-12; app. reply br. at 3-4). Our decision found that both parties provided consideration with respect to Mod. 2. *Bulova*, 14-1 BCA ¶ 35,521 at 174,098.

Appellant contends now that the Board erred as a matter of law in concluding that Mod. 2 was supported by consideration by the government and therefore enforceable (mot. at 7). Appellant provides two arguments to support its contention. First, appellant argues the government had waived its right to terminate appellant for default as of the date of Mod. 2 (mot. at 9-12). Second, appellant argues the government did not have a good faith belief that it had a right to terminate appellant as of the date of Mod. 2 and, therefore, Mod. 2 was invalid and unenforceable for lack of consideration (mot. at 12-15).

The government opposes appellant's motion arguing appellant has not identified any errors of law or of fact by the Board but is instead merely "re-packaging facts already decided and arguments already made" (gov't opp'n at 11). The government notes that both the arguments that Mod. 2 was not supported by consideration and that the government waived its right to terminate were argued in appellant's post-hearing brief and reply brief (gov't opp'n at 4-5 (citing app. br. at 11-12, 15 and app. reply br. at 2-4)).

Appellant responds that the government's position, that it is merely reasserting arguments made in its post-hearing briefs:

> [G]loss[es] over the essence of Bulova's Motion: that the findings of fact arrived at by the Board *after* post-hearing briefings necessarily require one of the conclusions as set forth in the Motion, i.e., that because the Board determined that the Government in fact delayed delivery of the EUCs for Romania and Bulgaria, the conclusions of law must be reevaluated according to the natural flow of events stemming from the Government's EUC delays.

(App. reply br. at 1) Thus, appellant argues that we must reevaluate our conclusions of law because of our finding that the government delayed delivery of the EUC (finding 22), stating:

> The Government spends much of the Opposition's fifteen pages attempting to argue that Bulova is merely reasserting its prior position that Modification No. 2 ("Mod. 2") lacked consideration and was thus void. Notably, however, the Government fails to address the fact that Bulova's "re-arguing" of this point did not, and could not have come about until *after* the Board's decision on the merits. Until such time as the Board agreed with Bulova that the Government delayed in providing Bulova with the proper EUCs, Bulova's argument was just that–an argument of a litigant that was contested by the Government. Critically, however, *after* the Board's decision in this case, Bulova's argument was accepted as fact and thus necessitated a re-evaluation of the Board's conclusions in light of this fact being established. Nowhere in its Opposition does the Government acknowledge the fact that the Board found it had delayed in delivering the EUCs or otherwise address the critical determination that the Government's long-held position– that it had timely delivered the EUCs and as such Bulova's protestations to the contrary were little more than a "red herring"–had been shot down.

> As more fully set forth in the Motion, Bulova contends that if the government believed that it provided valid EUCs on 22 May 2009, then Bulova had, in the government's mind, missed all of the PSL delivery dates and many of the PKM delivery dates, some by as many as seven (7) months at the time of the first cure notice. This delay in asserting its right to terminate the contract in the face of Bulova's continued performance constituted a waiver of the government's right to default Bulova. As the government had waived Bulova's failure to deliver, it did not have the right to terminate Bulova for non-performance (or more properly failure to deliver as was stated in the cure notices) as of the date of Mod. 2 and thus did not provide consideration for Mod. 2, rendering it invalid.

3

Bulova's second argument is that as the Board determined that the Government failed to provide proper EUCs for Romania and Bulgaria for nearly a year, the Government was incorrect in its assertion during Contract performance that it had a right to terminate Bulova as of 2 June 2010. In order for the government's relinquishment of this non-existent right to be [a] valid consideration for Mod. 2, it must have believed in good faith that its right was valid *at the time Mod. 2 was executed.* Based on the Government's course of conduct during the performance of the Contract, it is clear that the government did not believe it had the right to terminate Bulova, thereby rendering Mod. 2 void as well.

(App. reply br. at 1-3)

## DECISION

We do not grant a motion for reconsideration absent a compelling reason. *TMS Envirocon, Inc.*, ASBCA No. 57286, 13 BCA ¶ 35,204 at 172,717. In evaluating a motion for reconsideration, we examine whether the motion is based on newly discovered evidence, mistakes in the findings of fact, or errors of law. *American AquaSource, Inc.*, ASBCA Nos. 56677, 57275, 13 BCA ¶ 35,365. A motion for reconsideration does not provide the moving party the opportunity to reargue its position. *WestWind Technologies, Inc.*, ASBCA No. 57436, 11-2 BCA ¶ 34,859.

Although appellant has not presented any newly discovered evidence, it seems to equate our finding related to the date of receipt of acceptable EUCs as newly discovered evidence that would require us to reevaluate, our "conclusions of law... according to the natural flow of events stemming from the Government's EUC delays" (app. reply br. at 1). We reject this conclusion for two reasons. First, our findings are not evidence; they are decisions based upon the evidence already in the record. Second, even assuming *arguendo* that we considered our finding newly discovered evidence; it would not change our decision on the issue of whether or not Mod. 2 was supported by consideration. Whether or not an agreement such as Mod. 2, i.e., settlement of a dispute, is supported by consideration is determined by the parties' beliefs at the time of the agreement, even if later those beliefs are determined to be unfounded. *Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1574 (Fed. Cir. 1991); RESTATEMENT (SECOND) OF CONTRACTS § 74(1) cmt. b (1981) (a bargain is judged as it appeared to the parties at the time, even if the claim is later shown to be invalid). That is exactly how we addressed the consideration issue in our decision where we stated:

4

Under Mod. 2, the delivery schedule scheme was altered from that originally set forth, erasing the EUC issue and the risk that *either* side was not in compliance with contract requirements for that reason. The government agreed to different performance due dates (longer, in its view), giving up the possibility that it could terminate Bulova at that point for default for nonperformance; Bulova in turn also agreed to different performance due dates (shorter, in its view), giving up its position that Bulova was entitled to more time to perform because the EUCs were defective. By relinquishing these positions, which each side believed to be valid, the parties provided consideration to support the new delivery schedule.

*Bulova*, 14-1 BCA ¶ 35,521 at 174,098.

Furthermore, we also addressed any arguments purporting to excuse appellant's performance due to the EUC delays, stating:

Because bilateral Mod. 2 set up a new delivery schedule, the alleged EUC delay cannot now be considered as an excuse for performance problems relating to the PKM medium machine guns or the PSL sniper rifles. In agreeing to a new delivery schedule, a contractor erases the ability to raise pre-existing causes of delay. *Range Technology Corp.*, ASBCA No. 51943 *et al.*, 04-1 BCA ¶ 32,456 at 160,546 ("in agreeing to these new delivery schedules, the parties eliminated from consideration the causes of delay occurring before the mutually agreed extensions"); *Steelform, Inc.*, ASBCA No. 57724, 12-2 BCA ¶ 35,170 at 172,570 (non-delivery/default cannot be excused by causes of delay that existed before bilateral agreement to a new delivery schedule). There is no basis to revive the EUC issue for these weapons after issuance of Mod. 2.

*Bulova*, 14-1 BCA ¶ 35,521 at 174,097-98.

For reasons stated, the motion for reconsideration is denied.

Dated: 7 November 2014

JOHN J. THRASHER
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 57406, Appeal of Bulova Technologies Ordnance Systems LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
